UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE JAMES CARTER,

        Petitioner,

v.

JEFFREY WOODS,

        Respondent.

_____/

Case No. 2:16-cv-10590

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING PETITION FOR WRIT OF
HABEAS CORPUS [1], DENYING CERTIFICATE OF APPEALABILITY,
AND DENYING PERMISSION TO FILE APPEAL IN FORMA PAUPERIS**

    A jury in the Wayne County Circuit Court found Petitioner Willie James Carter guilty of first-degree murder in violation of Mich. Comp. Laws § 750.316. As a result of his conviction, Carter is currently serving a sentence of life imprisonment without possibility of parole. Carter filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons stated below, the Court will deny the petition, deny a certificate of appealability, and deny Carter permission to file an appeal in forma pauperis.

**BACKGROUND**

    Carter's case began with a fist fight occurring in front of his residence in the City of River Rouge. The fight turned deadly when Carter produced a knife and stabbed Tarrance Talley to death. Carter was charged with first-degree murder.

    Following jury selection, the prosecutor offered Carter a plea deal to the lesser offense of second-degree murder with a sentence agreement of 15 to 30 years. The trial judge cleared the courtroom and allowed defense counsel to meet with Carter and his mother to discuss the plea offer. After the meeting, Carter confirmed on the record that he

was thirty years old and had graduated from high school, that he understood the charge against him, and that he had discussed the prosecutor's plea offer with his attorney and his mother. ECF 5-4, PgID 504–05. Carter stated that he decided to reject the plea offer and proceed to trial, that no one forced him to do so, that no one promised him anything, that no one threatened him, and that he was making the decision to proceed to trial voluntarily and knowingly. *Id.* at 504–06.

At trial, multiple eyewitnesses—Dominique Walker, Leobardo Yanez, Jenna West, Alexis Moorehead, Adrian Collins, and Kenneth Herman—all described roughly the same event. Carter and his girlfriend, Walker, returned in their vehicle to Carter's residence after a shopping trip. When the two got out of their vehicle, Carter was confronted by the victim, Tarrance Talley, who was accompanied by another man, Kyle "Smiley" Browen. The confrontation quickly escalated into a fist fight between Talley and Carter. Talley was the initial aggressor. Carter was about 5'6" tall and weighed around 130 pounds. Talley was a much larger man, standing 6'0" tall and weighing 225 pounds. Nevertheless, witnesses described the two men exchanging blows, with the consensus being that Talley was getting the better of Carter, who suffered a broken nose.

After exchanging blows for several minutes, Carter was backed into his vehicle where he ended up lying on his back on the seat with Talley on top of him. Talley then sprang from the vehicle holding his mid-section. He stumbled into the street and fell. Carter followed him into the street holding a knife in his hand. Carter then stabbed a prone Talley multiple times. Talley tried to crawl away, but Carter kicked him in the head. Browen attempted to intervene, but Carter shrugged him off and then stabbed and kicked Talley additional times. Browen ran away. Eyewitnesses called 9-1-1 and police quickly arrived

at the scene.

When Officer Craig Waple of the River Rouge Police Department arrived at the scene he found an exhausted, beaten, and bloodied Carter holding a bloody knife in his hand. Waple told Carter to drop the knife, and then placed him in custody. Waple found Talley lying unconscious in the street in a pool of blood. A subsequent autopsy revealed that Talley had been stabbed ten times and had multiple other contusions and abrasions. Carter was taken to a hospital, where it was determined that he had a broken nose, and a cut on his thumb. The police attempted—unsuccessfully—to locate Browen up until the eve of trial. ECF 5-5, PgID 913–17.

The defense presented two witnesses. Stacey Wiedyke, a nurse at Henry Ford Wyandotte Hospital, testified that she treated Carter in the emergency room. According to hospital records, Carter was 30 years old, 167 centimeters tall, and weighed 59.9 kilograms (which converts to about 5'6", 132 lbs). Carter was treated for facial bruising, a nasal fracture, pain in the eyes, head, and abdomen, a foot contusion, and a thumb laceration. His face was swollen and bruised. The trial court admitted medical records which included a statement made by Carter at the hospital about how he was injured. ECF 5-6, PgID 1014. John Gifford, an investigator hired by the defense, testified regarding measurements he made at the scene of the incident used to determine the relative position of the eyewitnesses to the location of the incident.

After the defense rested, it was revealed that Browen was found housed at the Wayne County Jail on another case. Carter's trial counsel asked to be given an opportunity to interview Browen, but Browen refused to speak with him. Defense counsel was then given an opportunity to speak with Carter, and defense counsel then indicated that he did

not wish to call Browen as a defense witness. The prosecutor responded that she intended to call Browen as a rebuttal witness. Defense counsel objected that the prosecutor was impermissibly re-opening their proofs. The trial court overruled the objection, stating that Browen's testimony could be used to rebut the testimony of the defense witnesses, including Carter's statements to nurse Wiedyke about how he was injured. ECF 5-6, PgID 1012–14.

Browen testified that Talley confronted Carter as he exited his vehicle. Talley started swinging at Carter and a fist fight ensued. Carter got knocked into his car, and about two minutes later, Browen saw Talley lunge backward out of the car, holding his stomach. Browen saw that Carter was holding a knife. Talley then fell in the street, his "legs were like gone," and he was unable to get away from Carter. When Browen tried to stop Carter, Carter said "get the fuck out of the way; I'm about to kill this nigger." *Id.* at 1026–31. Browen tried to shield Talley, pleading with Carter that Talley was hurt, that "it's over with . . . you going to kill him." *Id.* at 1032. But Carter kept repeating "get the fuck out of the way," yelling "Fenkell for life," and then he continued to stab Talley. Talley asked Browen to call an ambulance, and Browen was screaming for someone to call the paramedics. Carter flipped Talley over, kicked him a couple more times, and then went through Talley's pockets. *Id.* at 1034–35. Browen left because he knew the police were coming, and he had a warrant out for his arrest. After Browen testified, Carter again waived his right to testify in his own defense. *Id.* at 1098.

Defense counsel argued in closing that the evidence showed that Carter was attacked by the much larger victim, and that he acted in self-defense. The prosecutor asserted that even assuming the victim initiated the fight, Carter's actions after he first

4

stabbed the victim indicated that he was no longer acting in self-defense and that he killed Talley with premeditation and deliberation. The jury found Carter guilty of first-degree murder, and he was sentenced to life imprisonment without possibility of parole.

Following his conviction and sentence, Carter filed a claim of appeal in the Michigan Court of Appeals. Carter's brief on appeal filed by his appellate counsel raised two claims, and a supplemental pro se brief raised a third claim:

> I. The trial court abused its discretion and denied defendant his state and federal constitutional rights to a fair trial by admitting improper rebuttal testimony that could have been presented in its case-in-chief.
>
> II. Defendant's conviction for first-degree murder must be reversed where there was insufficient evidence of premeditation and deliberation.
>
> III. Mr. Carter's Sixth Amendment rights were violated due to the ineffective assistance of counsel by attorney Anthony T. Chambers [because counsel told him to reject the plea offer.]

The Michigan Court of Appeals affirmed Carter's conviction. *People v. Carter*, No. 313512, 2014 WL 1401925, at *2 (Mich. Ct. App. April 10, 2014). Carter then filed an application for leave to appeal in the Michigan Supreme Court, raising the three claims rejected by the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Carter*, 855 N.W.2d 747 (Mich. Nov. 19, 2014) (table).

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d)(1), a federal court generally may not review claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. This section bars relief unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "[T]he 'unreasonable application' prong [of the statute] permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal citation and quotations omitted).

## DISCUSSION

Carter's petition raises three claims: (1) his due process right to a fair trial was violated when the prosecutor presented evidence in its rebuttal case that was not responsive to evidence presented in the defense case, (2) insufficient evidence was

6

presented at trial to show he acted with premeditation and deliberation, and (3) he was denied the effective assistance of counsel where his trial attorney, later disbarred, advised him to stand trial rather than accept a plea deal for counsel's pecuniary gain.

I. Admission of Rebuttal Evidence

Carter first asserts that under Michigan law, rebuttal evidence may only be introduced to contradict or disprove evidence presented by the State. He argues that because Browen's testimony was not offered to contradict any evidence presented in the defense case, it was fundamentally unfair and in violation of due process to allow Browen to testify. Carter supports this proposition by noting that in *Taylor v. Illinois*, 484 U.S. 400 (1988), the Supreme Court held that a defense witness may be constitutionally precluded from testifying if the defendant did not provide a notice of intent to call the witness. Carter attempts to deduce from *Taylor* that if a defense witness may be constitutionally prevented from testifying for failure of the defendant to give notice, then it must follow that allowing an un-noticed prosecution witness to testify in rebuttal is unconstitutional.

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a threshold question is whether "clearly established" law governs the case. *See Carey v. Musladin*, 549 U.S. 70, 74–77 (2006). Law is "clearly established" when Supreme Court precedent unambiguously provides a "controlling legal standard." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). The Court narrowly construes the phrase "clearly established" law. *See Wright v. Van Patten,* 552 U.S. 120, 125 (2008); *Musladin*, 549 U.S. at 76.

Carter has failed to identify any clearly established Supreme Court law that prevents a trial court from allowing a prosecutor to present a witness in its rebuttal case, even if the witness should have been presented in the prosecutor's case-in-chief. The only Supreme

7

Court case cited by Carter, *Taylor*, says nothing about constitutional limitations placed on a trial court's authority to allow a prosecutor to call a witness in its rebuttal case. In the absence of any controlling Supreme Court constitutional standard, the Michigan Court of Appeals decision in this case is insulated from federal habeas review under section 2254(d).

And to the extent broad statements made by the Supreme Court regarding fundamental fairness apply to Carter's claim, the result reached by the state court was not unreasonable. "[A]ll the Constitution requires, per the due process clause, is that the defendant not be deprived of a fundamentally fair trial." *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002). The Constitution does not require "pre-trial disclosure of any impeachment evidence related to the defendant's case." *Id.* The decision to allow Browen to testify in the rebuttal case was not fundamentally unfair because—as the state court recognized—Carter was given an opportunity to revisit his decision not to testify or present further evidence after hearing Browen's testimony.

To the extent Browen gave additional details about the incident not provided in the prosecutor's case-in-chief, Carter was given a full and fair opportunity to cross examine him about his version of events and then to provide testimony to respond to Browen's testimony, if he wished. Thus, the decision of the state courts was not unreasonable.

II. Sufficiency of the Evidence

Carter's second claim asserts that there was constitutionally insufficient evidence presented at trial to sustain his conviction because the prosecutor did not prove beyond a reasonable doubt that Carter acted with premeditation and deliberation. Carter asserts that the evidence showed that he had no idea he would be attacked by the much larger victim,

that he stabbed the victim in the course of a fight he did not initiate, and he therefore could not have premeditated or deliberated the killing.

In reviewing the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The reviewing court may not "reweigh the evidence, reevaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). "[E]ven were [the court] to conclude that a rational trier of fact could not have found a Petitioner guilty beyond a reasonable doubt, on habeas review, [the court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*; *see* 28 U.S.C. § 2254(d)(2).

The Michigan Court of Appeals did not unreasonably reject Carter's sufficiency of the evidence claim on direct appeal:

> A conviction for first-degree murder requires proof that "the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate." *People v. Jackson*, 292 Mich. App. 583, 588 (2011). "Premeditation may be established through evidence of (1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide." *People v. Unger*, 278 Mich. App. 210, 229 (2008). Premeditation and deliberation require sufficient time to allow the defendant to take a second look. *Id.* It "may be merely seconds, or minutes, or hours, or more, dependent on the totality of the circumstances surrounding the killing." *People v. Conklin*, 118 Mich. App. 90, 93 (1982), overruled on other grounds by *People v. Williams*, 422 Mich. 381, 392 (1985).
>
> Here, defendant wrongly asserts that there is insufficient evidence to sustain his jury conviction for first-degree murder under MCL 750.316. In fact, the prosecution presented ample evidence from which a rational trier of fact could conclude that defendant's murder of Talley was both premeditated and deliberate, as required by MCL 750.316. Talley and defendant engaged in a fistfight for several minutes, which defendant ended by stabbing Talley. A

9

witness testified that Talley stumbled into the middle of the street, and fell immobile on the ground. Defendant, instead of ending the violence at this point, proceeded to tell a bystander to "[g]et the f--- out the way" because he was "about to kill this n-----," and then stabbed Talley at least six to seven times. And, as noted, the medical examiner testified at trial that Talley suffered ten stab wounds.

Therefore, viewing the facts in the light most favorable to the prosecution, the jury correctly concluded that defendant killed Talley with premeditation and deliberation per MCL 750.316.

*Carter*, 2014 WL 1401925, at *1–2.

As noted by the state appellate court, viewed most favorably to the prosecution, ample evidence was presented to prove the elements of premeditation and deliberation. Carter focuses on the fact that Talley started the altercation, that he was surprised by the attack, that Talley was a much larger man, and that witnesses described Talley as winning the fist fight. And if Carter had stabbed Talley only the one time while being beaten in his car, the jury might very well have acquitted him on the basis of self-defense. But Carter ignores what occurred after he first stabbed Talley. Viewed most favorably to the prosecution, the evidence showed that after Talley was first stabbed, he stumbled and collapsed to the ground. Carter followed Talley, continued to stab and kick him, chased away Browen who was pleading with Carter to stop because he was killing Talley, and then stabbed Talley additional times. During the incident, Carter even announced his intention to kill Talley.

One rational view of the evidence certainly suggests that the killing occurred in the "heat of passion," and it would not have been surprising for the jury to return a verdict of guilty of second-degree murder. But viewing the evidence most favorably to the prosecution as the *Jackson* standard directs, a rational fact-finder could find beyond a reasonable doubt

10

that after Talley collapsed, Carter had sufficient time to "take a second look" before deciding to kill Talley, and therefore that he acted with premeditation and deliberation as defined by Michigan law. Accordingly, Carter's sufficiency of the evidence claim was reasonably rejected by the Michigan Court of Appeals.

III.  Ineffective Assistance of Counsel

Finally, Carter asserts that his trial counsel was ineffective for advising him to stand trial rather than accept the prosecutor's last-minute plea offer to second-degree murder. Carter notes that his trial attorney was subsequently disbarred for using other clients' money for personal use. He asserts that his counsel's advice was based on the fact he could charge a larger fee for a trial rather than what was in Carter's best interests.

To establish ineffective assistance of counsel, a defendant must show both that: (1) counsel's performance was deficient, i.e., "that counsel's representation fell below an objective standard of reasonableness;" and (2) the deficient performance resulted in prejudice to the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (quotation omitted). The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When a habeas petitioner contends that his lawyer's bad advice caused him to reject a plea offer from the prosecution, he must show prejudice by establishing that without the bad advice, there is a reasonable probability that he "would have accepted the plea and the prosecution would not have withdrawn it in

11

light of intervening circumstances." *Lafler v. Cooper*, 566 U.S. 156, 163-64 (2012).

The record belies Carter's claim that his counsel's advice caused him to go to trial instead of accepting the plea offer. During the second day of trial it was defense counsel who broached the idea of a plea bargain, when he asked the prosecution if they would be willing to offer any sort of reduced plea. ECF 5-4, PgID 502–03. The prosecutor said it would have to be to second-degree murder. *Id.* At the beginning of the next trial day, the offer of second-degree murder with a sentence agreement of 15 to 30 years was made. *Id.* at 503. Defense counsel asked if Carter could speak with his mother in private. *Id.* at 501. Carter then met privately with his mother, defense counsel, and another attorney who was assisting defense counsel. *Id.* at 502.

The trial court then questioned Carter under oath regarding his decision to reject the plea offer and stand trial. *Id.* at 503–06. The trial court explained the plea offer, and Carter confirmed he discussed the offer with his attorney and his mother. *Id.* The court told Carter that ultimately it was his decision. When asked what decision Carter made, Carter indicated he would proceed to trial, and that he rejected the offer. *Id.* at 505–06. The court asked if anyone had forced him to make this decision or promised him anything in exchange for this decision, and Carter answered "no." *Id.* at 506. The court asked "is this your own decision?" *Id.* Carter said, "yes" and affirmed that he was making the decision voluntarily and knowingly. *Id.*

In light of the record made in the trial court, Carter has failed to show that there is a reasonably probability that he would have accepted the plea agreement absent his counsel's alleged bad advice. Indeed, the record indicates that contrary to Carter's claim, it was his counsel that requested a plea offer on the second trial date, and it was Carter

who made the decision to reject it after consultation with two attorneys and his mother. The claim is therefore without merit.

IV.  Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's resolution of Carter's claims because they are meritless. Therefore, the Court denies a certificate of appealability.

The Court will also deny Carter leave to appeal in forma pauperis, because an appeal would be frivolous. *Allen v. Stovall*, 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus [1] is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that leave to appeal in forma pauperis is **DENIED**.

**SO ORDERED**.

                                                s/Stephen J. Murphy, III
                                                STEPHEN J. MURPHY, III
                                                United States District Judge

Dated: May 30, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 30, 2017, by electronic and/or ordinary mail.

                                                s/David P. Parker
                                                Case Manager